IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HALLMARK LICENSING, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 23-cv-00211 |

## COMPLAINT

Plaintiff Hallmark Licensing, LLC ("Plaintiff" or "Hallmark") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Hallmark's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Hallmark substantial injury in the State of Illinois.

## II.  INTRODUCTION

3.  This action has been filed by Hallmark to combat e-commerce store operators who trade upon Hallmark's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including greeting cards, entertainment products, and clothing, using infringing and counterfeit versions of Hallmark's federally registered trademarks (the "Counterfeit Products").  Defendants create e-commerce stores operating under one or more Seller Aliases advertising, offering for sale, and selling Counterfeit Products to unknowing consumers.  E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation.  Hallmark is forced to file this action to combat Defendants' counterfeiting of the registered Hallmark trademarks, as well as to protect unknowing consumers from purchasing potentially dangerous Counterfeit Products over the internet.  Hallmark has been and continues to be irreparably damaged through consumer

confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

### III. THE PARTIES

**Plaintiff**

4. Plaintiff Hallmark Licensing, LLC is a Kansas limited liability company with its principal place of business located in Kansas City, Missouri.

5. Since at least as early as 1949, Hallmark-related entities have used the HALLMARK mark and crown design shown below on personal expression products. Today, Hallmark uses the mark and design in connection with a variety of products and services, including greeting cards, entertainment products, clothing, gifts, and related retail store services (collectively, the "Hallmark Products"):



6. The Hallmark brand has continued to evolve across its portfolio of businesses. Quality family entertainment started with the Hallmark Hall of Fame and lives on with the Hallmark Channel and Hallmark Movies & Mysteries cable television networks that reach millions of households with family-oriented programming.

7. Hallmark's greeting cards continue to transform the industry with lines like Hallmark Signature, Good Mail, and Just Because. Hallmark gift products can also be found at tens of thousands of retail outlets worldwide and online at hallmark.com. Hallmark publishes in 30 languages, and Hallmark Products are available in more than 100 countries around the globe.

8. Hallmark is an industry leader for personal expression products and family entertainment and has developed a strong reputation as a supplier of high-quality products.

Hallmark Products have become enormously popular, driven by Hallmark's arduous quality standards and innovative designs. Among the purchasing public, genuine Hallmark Products are instantly recognizable as such. The Hallmark brand has come to symbolize high quality, and Hallmark Products are renowned for their quality and reliability.

9. Hallmark incorporates a variety of distinctive marks in its various Hallmark Products. Hallmark has registered its trademarks with the United States Patent and Trademark Office. Hallmark Products typically include at least one of Hallmark's registered trademarks. Hallmark uses its trademarks in connection with the marketing of its Hallmark Products, including the following marks which are collectively referred to as the "HALLMARK Trademarks."

| Registration No. | Trademark | Goods and Services |
|---|---|---|
| 380,596 | HALLMARK | For: Greeting cards in classes 9, 16, 28 |
| 6,013,810 | HALLMARK | For: Gift books featuring recipes, inspirational and personalized content, and movie themes; Story books in class 16 |
| 4,814,915 | HALLMARK | For: plush toys in class 28 |
| 4,664,608 | HALLMARK | For: Decorative magnets in class 9 |
| 5,033,265 | HALLMARK | For: gift enclosure cards; plastic wrap and plastic film for packaging, bags made of cellophane paper; pre-printed paper gift tags in class 16<br><br>For: household containers for holding flowers; vase decorations made of ceramic, porcelain, or glass; decorative ornaments made of ceramic; figurines made of ceramic, porcelain or glass; mugs; vases in class 21 |

| | | |
|---|---|---|
| 916,900 | HALLMARK | For: Furnishing advertising material in the form of posters, television commercials, display pieces and signs in class 35, 36, 38, 41, 42, 43, 44, 45 |
| 5,794,656 | HALLMARK | For: Shirts; Socks in class 25 |
| 525,798 | Hallmark | For: Greeting cards in classes 9, 16, 28 |
| 5,794,657 | Hallmark | For: Shirts; Socks in class 25 |
| 5,858,356 | Hallmark | For: Stencils in class 16 |
| 5,587,711 | Hallmark | For: craft kits comprised primarily of felt materials in class 24

For: kits comprised primarily of stitching implements and embroidery; kits comprised primarily of stamped embroidery in class 26 |
| 5,499,357 | Hallmark | For: Decorative glass jars in class 21 |
| 3,634,799 | Hallmark | For: Christmas tree ornaments in class 28 |
| 2,457,248 | Hallmark | For: Decorative pillows in class 20 |

| | | |
|---|---|---|
| 2,469,522 | Hallmark | For: Dinnerware, namely, plates, bowls, cups, platters, mugs, salt and pepper shakers; beverage glasses; butter dishes; paper cups and paper plates; vases in class 21 |
| 2,469,521 | Hallmark | For: Blankets; towels in class 24 |
| 864,077 | Hallmark | For: Cups; plates; nut cups; treat bags; merchandise bags, all made of paper in classes 6, 13, 14, 15, 16, 18, 20, 21, 22, 34<br><br>For: Cord and yarn ties in class 22<br><br>For: Face masks and monster heads for holidays and children's parties; pen and card sets-namely, playing cards, score pad, and pen in classes 16, 28<br><br>For: Napkins; coasters; guest towels; table covers; doilies; place mats; party goods coordinated sets-namely, invitations and paper table settings, including table covers, napkins, and place cards; luncheon ensembles-namely, sets of luncheon napkins, beverage napkins and coasters; saucer mats; memorandum pads; score pads; address labels; booklets, such as memorandum, Christmas list record and address booklets; and scrap books, all made of paper in class 16<br><br>For: Party books, containing material concerning party themes, games, decorations and menus; recipe booklets; books, including poetry, biographies, quotations, children's books, and the like; and picture post cards in class 16<br><br>For: Bows and plastic bow pins; gift kits containing fabric, instructions for |

| | | |
|---|---|---|
| | | making bags, and similar articles in classes 21, 26 |
| | | For: Cake decorations, such as figures, numerals, flowers, and the like; anniversary numerals-namely, decorative numerals for cakes, packages and centerpieces; home decorations, such as flowers and centerpieces; party favors and decorations; package decorations, all made of paper; gift kits; decorative wall plaques; paper party hats; and St. Patrick's Day pins in classes 3, 6, 14, 16, 17, 19, 20, 21, 22, 24, 26, 27, 28 |
| 842,461 | *Hallmark* | For: Writing instruments-namely, pens and pencils in classes 16, 26, 27 |
| 821,931 | *Hallmark* | For: Puzzles in classes 16, 18, 20, 22, 25, 28 |
| 657,441 | *Hallmark* | For: Decorative gift wrapping paper, decorative note paper, albums in classes 16, 26, 27 |
| 654,790 | *Hallmark* | For: Christmas seals, decorative seals, gift tags and enclosure cards, door and window displays in the nature of cardboard signs sold as such for use on doors and in store windows and on counters, party invitations, birth announcements, calendars in classes 9, 16, 28 |

10. The above U.S. registrations for the HALLMARK Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the HALLMARK Trademarks constitute *prima facie* evidence of their validity

and of Hallmark's exclusive right to use the HALLMARK Trademarks pursuant to 15 U.S.C. § 1057(b). The HALLMARK Trademarks have been used exclusively and continuously by Hallmark for many years and have never been abandoned. True and correct copies of the United States Registration Certificates for the above-listed HALLMARK Trademarks are attached hereto as **Exhibit 1.**

11. The HALLMARK Trademarks are exclusive to Hallmark and are displayed extensively on or in close connection with Hallmark Products and in Hallmark's marketing and promotional materials. Hallmark Products have become quite popular and have been extensively promoted and advertised at great expense. Hallmark Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as the industry leader in personal expression products and family entertainment. Because of these and other factors, the Hallmark name and HALLMARK Trademarks have become famous throughout the United States.

12. The HALLMARK Trademarks are distinctive when applied to the Hallmark Products and packaging, signifying to the purchaser that the products come from Hallmark and are manufactured to Hallmark's quality standards. Whether Hallmark manufactures the products itself or contracts with others to do so, Hallmark has ensured that products bearing or sold within packaging bearing the HALLMARK Trademarks are manufactured to the highest quality standards. The HALLMARK Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the HALLMARK Trademarks is of incalculable and inestimable value to Hallmark.

13. Hallmark has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the HALLMARK Trademarks. As a result,

products bearing the HALLMARK Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Hallmark. The widespread fame, outstanding reputation, and significant goodwill associated with the Hallmark brand have made the HALLMARK Trademarks invaluable assets of Hallmark.

**The Defendants**

14. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Hallmark. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

15. On information and belief, Defendants either individually or jointly own and/or operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Hallmark to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Hallmark will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

16. The success of the Hallmark brand has resulted in significant counterfeiting of the HALLMARK Trademarks. Consequently, Plaintiff has a worldwide brand protection program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Hallmark has identified many fully interactive, e-

commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection ("CBP"), report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection **Exhibit 2**. Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), 51 percent of which originated from China and Hong Kong. *Id.*

17. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 4** (finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary). Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can

10

appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186–87.

18. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Products to residents of Illinois.

19. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Hallmark has not licensed or authorized Defendants to use any of its HALLMARK Trademarks, and none of the Defendants are authorized retailers of genuine Hallmark Products.

20. Many Defendants also deceive unknowing consumers by using the HALLMARK Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the internet looking for websites relevant to consumer searches for Hallmark Products. Other e-commerce stores operating under Seller Aliases omit using the HALLMARK Trademarks in the item title to evade enforcement efforts

while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Hallmark Products.

21. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to internet based e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

22. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by E-commerce store operators like Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

23. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

24. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

25. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Hallmark's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Hallmark. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court.

26. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Hallmark, have jointly and severally, knowingly and willfully used and continue to use the HALLMARK Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the internet.

27. Defendants' unauthorized use of the HALLMARK Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Hallmark.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

28. Hallmark hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

29. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered HALLMARK Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The HALLMARK Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Hallmark Products offered, sold or marketed under the HALLMARK Trademarks.

30. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the HALLMARK Trademarks without Hallmark's permission.

31. Hallmark is the exclusive owner of the HALLMARK Trademarks. The United States Registrations for the HALLMARK Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Hallmark's rights in the HALLMARK Trademarks, and are willfully infringing and intentionally using counterfeits of the HALLMARK Trademarks. Defendants' willful, intentional, and unauthorized use of the HALLMARK Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

32. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33. Hallmark has no adequate remedy at law, and if Defendants' actions are not enjoined, Hallmark will continue to suffer irreparable harm to its reputation and the goodwill of its well-known HALLMARK Trademarks.

34. The injuries and damages sustained by Hallmark have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

35. Hallmark hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

36. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Hallmark or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Hallmark.

37. By using the HALLMARK Trademarks in connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

38. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

39. Hallmark has no adequate remedy at law and, if Defendants' actions are not enjoined, Hallmark will continue to suffer irreparable harm to its reputation and the goodwill of the Hallmark brand.

**PRAYER FOR RELIEF**

WHEREFORE, Hallmark prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the HALLMARK Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Hallmark Product or is not authorized by Hallmark to be sold in connection with the HALLMARK Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Hallmark Product or any other product produced by Hallmark that is not Hallmark's or not produced under the authorization, control, or supervision of Hallmark and approved by Hallmark for sale under the HALLMARK Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Hallmark, or are sponsored by, approved by, or otherwise connected with Hallmark;

   d. further infringing the HALLMARK Trademarks and damaging Hallmark's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Hallmark, nor authorized by Hallmark to be sold or offered for sale, and which bear any of Hallmark's trademarks, including the

HALLMARK Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Hallmark's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the HALLMARK Trademarks;

3) That Defendants account for and pay to Hallmark all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the HALLMARK Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Hallmark be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the HALLMARK Trademarks;

5) That Hallmark be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 13 day of January 2023.　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Justin R. Gaudio
　　　　　　　　　　　　　　　　　　　　Amy C. Ziegler
　　　　　　　　　　　　　　　　　　　　Justin R. Gaudio
　　　　　　　　　　　　　　　　　　　　Marcella D. Slay
　　　　　　　　　　　　　　　　　　　　Berel Y. Lakovitsky
　　　　　　　　　　　　　　　　　　　　Greer, Burns & Crain, Ltd.
　　　　　　　　　　　　　　　　　　　　300 South Wacker Drive, Suite 2500
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60606
　　　　　　　　　　　　　　　　　　　　312.360.0080 / 312.360.9315 (facsimile)
　　　　　　　　　　　　　　　　　　　　aziegler@gbc.law
　　　　　　　　　　　　　　　　　　　　jgaudio@gbc.law
　　　　　　　　　　　　　　　　　　　　mslay@gbc.law
　　　　　　　　　　　　　　　　　　　　blakovitsky@gbc.law

　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff Hallmark Licensing, LLC*